UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| J & L FAMILY, L.L.C. | CIVIL ACTION NO. 16-1193 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| BHP BILLITON PETROLEUM PROPERTIES (N.A.), L.P, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendants' Motion for Partial Summary Judgment. [Record Document 48]. Defendants, BHP Billiton Petroleum Properties (N.A.), L.P., Petrohawk Energy Corporation, BHP Billiton Petroleum (KCS Resources), L.L.C., and BHP Billiton Petroleum (TxLa Operating) Company (collectively "BHP") seek summary judgment on several narrow issues related to the availability of attorney fees: (1) Plaintiff's claim for penalties and attorney fees under La. R.S. 31:212.21-.23; (2) Plaintiff's claim for contract fraud and associated attorney fees; (3) Plaintiff's claim for attorney fees for tort fraud; and (4) Plaintiff's claim for attorney fees under La. R.S. 31:212.31. For the reasons discussed below, the Court **GRANTS** BHP's motion and **DISMISSES WITH PREJUDICE** each of these four claims.

**I. Background**

    **A. Factual Background**

While there are numerous factual disputes between BHP and Plaintiff, J & L Family, L.L.C. ("J & L"), both parties agree on the facts relevant to this motion. [Record Documents 48-1 and 58-1]. J & L owns land that lies within two drilling units—the Jestma Unit and the Powers Unit—created

1

by the Louisiana Commissioner of Conservation ("Commissioner"), but J & L's interest is not subject to any oil and gas lease. [Record Documents 48-1 at 1–2 and 58-1 at 1–2]. BHP operates wells on the drilling units. [Record Documents 48-1 at 2 and 58-1 at 2–3]. J & L and BHP have neither signed formal contracts concerning the wells nor executed division orders, formal joint operating agreements, or formal marketing election letters. [Record Documents 48-1 at 3 and 58-1 at 3]. Instead, the parties' relationship is controlled by statute such that BHP is required to pay J & L its pro rata share of the proceeds from the sale of the oil and gas extracted from the units. [Record Documents 1-2 at 5, 10, 12 and 5 at 2]. *See* La. Stat. Ann. §§ 30.10, 103.1 (2017).

### B. Procedural Background

J & L filed suit alleging the following: (1) that BHP's regular reports to J & L regarding production from the units did not satisfy statutory requirements, (2) that BHP improperly sought operating expenses from J & L, (3) that BHP improperly calculated J & L's ownership interest, (4) that BHP failed to properly pay J & L its pro rata share of revenues, and (5) that BHP engaged in fraudulent conduct in its dealings with J & L. [Record Document 1-2 at 3–15]. Of particular relevance to the instant motion, J & L sought attorney fees "based upon [BHP's] fraudulent actions," as well as under La. R.S. 31:212.21–.23, La. R.S. 31:212.31, and "other applicable provisions of the Louisiana Mineral Code." [Record Document 1-2 at 16]. Both parties moved for partial summary judgment on the issue of whether BHP had adequately complied with the reporting requirements of La. R.S. 30:103.1–.2. [Record Documents 12 and 22]. Following oral argument, the Court denied the motions, finding that unresolved questions of fact precluded summary judgment. [Record Document 57]. Shortly before oral argument, BHP filed the instant motion seeking partial summary judgment on the issue of J & L's ability to recover attorney fees. [Record Document 48].

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court "to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).

Summary judgment is always appropriate "where the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991). Questions of statutory interpretation are questions of law. *Khanh Nhat Thuy Le v. Holder*, 732 F.3d 425, 427 (5th Cir. 2013). The availability of attorney fees, either as a general matter or under a particular statute, is a question of law. *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 701 (5th Cir. 2009). Here J & L's claims for attorney fees turn on the interpretation of various statutes and thus present pure questions of law appropriate for summary judgment.

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

## III. Law and Analysis

### A. Penalties and Attorney Fees Under La. R.S. 31:212.21–.23

The Louisiana Mineral Code provides for penalties and, in certain instances, attorney fees when a mineral lessee fails to timely pay royalties or other production payments to the "owner of a mineral production payment or a royalty owner other than a mineral lessor." La. Stat. Ann. §§ 31:212.21–.23 (2000). Because J & L is an unleased owner, BHP argues that J & L falls outside the class of persons protected by the statute and so can claim neither penalties nor attorney fees. [Record Document 48-2 at 3–4], In support it cites *Adams v. Chesapeake Operating Co.*, a recent Fifth Circuit case holding that the statute is inapplicable to unleased mineral interest owners. 561 F. App'x 322, 326 (5th Cir. 2014). In response, J & L concedes that the case is binding upon the Court, but insists that it was wrongly decided. [Record Document 58 at 2–5].

Although it is not clear that an unpublished Fifth Circuit opinion necessarily binds this Court,[2] the Court finds that the Fifth Circuit panel reasonably resolved the ambiguity in the statutory language by looking to the enacting legislation's title, which states that the new law will "provide for the remedies and procedures for obtaining payment by a *royalty owner other than a mineral lessor* and by the *purchaser of a mineral production payment*." *Adams*, 561 F. App'x at 326 (emphasis added). On the basis of this language, the court found:

> Adams does not fall within the scope of Sections 31.212.21–.23 because he is not a "purchaser of a mineral production payment." Rather, he is an unleased mineral interest owner. While Adams is correct that a section's title does not constitute part

---

[2] In the Fifth Circuit, unpublished decisions issued prior to January 1, 1996 are precedent. 5th Cir. R. 47.5.3. However, unpublished opinions issued on or after January 1, 1996 are not precedent except in limited circumstances such as res judicata, collateral estoppel, and law of the case, none of which are applicable here. 5th Cir. R. 47.5.4.

4

> of the law, it does provide some aid in interpreting legislative intent where the language of the statute is unclear. Section 31:212.21 merely states that it covers "the owner of a mineral production payment or a royalty owner." "[O]wner" could refer to a party who recently purchased a production payment or to someone who acquired the production payment through some other means. Because Section 31:212.21 is ambiguous as to the parties encompassed within the statute, we examine the title of that section of the Mineral Code to determine the scope of the statute. Based on the title to Sections 31:212[.21]–[.]23, it is apparent that Sections 31:212.21–.23 were intended to cover the "purchasers of mineral product payments." Accordingly, Adams may not bring a claim pursuant to Sections 31:212.21–.23.

*Id.* (internal citations and quotation marks omitted).

As a result, because J & L has not purchased the stream of revenue from the production on the units, Sections 31:212.21–.23 do not apply to J & L's interest. Therefore, J & L is entitled to neither statutory penalties nor attorney fees. Hence, the Court grants BHP's motion for summary judgment on this issue.

### B. <u>Attorney Fees for Contract Fraud</u>

BHP argues that, as there was no contract between J & L and BHP, J & L has no cause of action for contract fraud and so cannot recover the attorney fees available in an action to rescind a contract on the basis of fraud. [Record Document 48-2 at 4–6]. In response, J & L appears to concede that there is no contract between J & L and BHP, but argues that attorney fees should still be available for BHP's alleged breach of its duty to deal fairly with J & L. [Record Documents 58 at 5–8 and 62 at 5–6]. J & L argues on the basis of the recent Louisiana Supreme Court decision in *Stutts v. Melton*, 2013-0557 (La. 10/15/13); 130 So. 3d 808, that the codal provision authorizing attorney fees when a contract is rescinded for fraud should be applied by analogy to BHP's noncontractual obligations to J & L. [Record Documents 58 at 5–8 and 62 at 5–6].

5

### 1. Availability of Attorney Fees Under Article 1958

The parties agree that the wells at issue were drilled pursuant to the Commissioner's compulsory pooling power and that the parties have executed no formal contracts. [Record Documents 48-1 at 1–3 and 58-1 at 2–3]. The Louisiana Civil Code provides: "The party against whom rescission is granted because of fraud is liable for damages and attorney fees." La. Civ. Code. Ann. art. 1958 (2008). Here, however, no contract was ever formed between BHP and J & L; therefore, there is nothing to rescind. On this basis, BHP argues that it cannot be liable for attorney fees under Article 1958. [Record Document 48-2 at 7]. J & L essentially concedes that on its face Article 1958 does not apply to J & L's noncontractual obligee-obligor relationship with BHP. [Record Document 58 at 7 and 62 at 5]. Therefore, because there is no contract between BHP and J & L, attorney fees are not available under the strict terms of Article 1958.

### 2. Availability of Attorney Fees for Actions in Quasi-Contract

Aware that it is not in privity of contract with BHP, J & L characterizes their relationship as quasi-contractual and argues that attorney fees should be available by analogy to Article 1958's provision of attorney fees in the context of a contract. [Record Document 62 at 5]. In Louisiana, attorney fees are available only when "authorized by statute or contract." *Sher v. Lafayette Ins. Co.*, 2007-2441, p. 18 (La. 4/8/08); 988 So. 2d 186, 201. Thus, they are unavailable in actions that sound in quasi-contract when no statute provides for fee recovery. *Blackie's Rental Tools & Supply Co., Inc. v. Vanway*, 563 So. 2d 350, 354 (La. Ct. App. 1990); *cf. Dantagnan v. I.L.A. Local 1418*, 496 F.2d 400, 403 (5th Cir. 1974) (implying that recovery of attorneys' fees is not characteristic of an action to enforce a quasi-contract). Although the Louisiana Supreme Court has not definitively ruled on the question, the Louisiana Third Circuit has held that the statutory protections for unleased

6

owners "give[] the [unleased] owner a cause of action in quasi-contract . . . insofar as the operator, in selling the owner's proportionate share of the oil produced, is acting as a *negotiorum gestor* or manager of the owner's business in selling the oil produced." *Taylor v. David New Operating Co.*, 619 So. 2d 1251, 1255 (La. Ct. App. 1993) (citing La. Stat. Ann. § 30:10(A)(3)). J & L construes BHP's obligations as arising under the same statute interpreted by the Third Circuit. [Record Documents 1-2 at 10 and 58 at 5]. However, the quasi-contract provisions of the Civil Code do not provide for the fee recovery. *See* La. Civ. Code Ann. bk. III, tit. V, chs. 1–2 (2010). Therefore, there is no statutory authority for the Court to award attorney fees for any alleged breach of BHP's quasi-contractual obligations.

### 3. Availability of Attorney Fees Under *Stutts v. Melton*

J & L also argues that *Stutts v. Melton* grants courts authority to craft an "equitable remedy" of attorney fees where the statute authorizing the cause of action does not expressly provide for fee recovery, but an analogous statute does. [Record Document 58 at 5–8]. Because Mineral Code provisions applicable to other obligee-obligor relationships provide for fee recovery, J & L maintains that equity requires the Court to award attorney fees on the basis of an analogy between those relationships and that of J & L as an unleased mineral interest owner to BHP as the unit operator. [Record Document 58 at 7–8].

In *Stutts*, the defendants committed fraud by misrepresenting the condition of the roof of a home that they sold. 2013-0557, p. 8; 130 So. 3d at 814. Although the plaintiffs would have been entitled to seek rescission of the contract of sale, they opted instead to seek only the replacement value of the roof. *Id.* at p. 9; 130 So. 3d at 814. The court recognized that Article 1958 provides for attorney fees only when a contract is rescinded. *Id.* (citing La. Civ. Code Ann. art. 1958). However,

7

the court found that "the intent of the legislation providing attorney fees when the obligor has committed fraud is to punish the fraudulent conduct, regardless of whether the obligee seeks rescission of the contract." *Id.* at p. 10; 130 So. 3d at 815. Because there is a lacuna in the Civil Code for situations in which a defrauded party seeks compensatory damages but not rescission of the entire contract, the court looked to the analogous redhibition articles, which allow for fee recovery in an action against a bad faith seller where the buyer seeks only a reduction in the purchase price. *Id.* at pp. 9–10; 130 So. 3d at 814–15 (citing La. Civ. Code Ann. arts. 4, 2541, 2545 (1996 & 2013)). The court then concluded that "in order to provide an equitable remedy," it would allow the plaintiffs to recover attorney fees. *Id.* at p. 11; 130 So. 3d at 815. In the only case to have applied *Stutts* to new facts, the Louisiana Third Circuit held that *Stutts* did not apply to fraud in the context of a "verbal month-to-month lease," implicitly limiting the reach of *Stutts* to contracts of sale. *See Anderson v. Moreno's Air Conditioning, Inc.*, 2014-27, pp. 12–13 (La. App. 3 Cir. 6/4/14); 140 So. 3d 841, 851.[3] In effect, J & L asks this Court to find that the holding of *Stutts* extends to quasi-contracts and to fill the statutory gap in which attorney fees are not provided to owners of unleased

---

[3] J & L attempts to distinguish *Anderson* by arguing that because the court went on to find that no fraud had been committed, the principle of law articulated by the court regarding the application of *Stutts* can be ignored. [Record Document 62 at 6]. While J & L is correct that the Third Circuit's ultimate holding was that fraud had not been committed, the court expressly found *Stutts* inapplicable:

> We find *Stutts*, which involved a purchase agreement, is not applicable to this case based on the trial court's determination that the relationship between the Estates and MACI was "under a verbal month-to-month lease." This case is governed by the long line of cases in which Louisiana courts have long held that attorney fees are not allowed except where authorized by statute or contract.

*Anderson*, 2014-27, p. 13; 140 So. 3d at 851 (internal citations and quotation marks omitted) (citing *Stutts*, 2013-0557, p. 8; 130 So. 3d at 814).

mineral interests by drawing an analogy to provisions awarding attorney fees to other types of oil and gas payees. [Record Document 58 at 7–8].

To determine the substantive law of Louisiana, the Fifth Circuit has instructed courts to look first to "final decisions of the Louisiana Supreme Court." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Am. Int'l Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)). In the absence of such a decision,

> [W]e must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case. In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of jurisprudence constante, is a secondary law source in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

*Id.* (internal citations omitted).

Thus, the Court must first determine whether *Stutts* provides an answer to the present question. As discussed above, the literal language of Article 1958 authorizes recovery of attorney fees only when a fraudulent contract is rescinded. La. Civ. Code Ann. art. 1958. A careful reading of *Stutts* reveals that the availability of attorney fees in the context of fraud where a plaintiff does not seek rescission turns upon whether the plaintiff "under the facts of th[e] case and the findings of the trial court . . . would have been entitled to [rescission]." *Stutts*, 2013-0557, p. 9; 130 So. 3d at 814. Thus, the Louisiana Supreme Court applied the redhibition articles by analogy only <u>after</u> it had determined that the plaintiffs would have been able to seek rescission (and thus recover attorney fees) if they had chosen the greater remedy of rescission rather than the lesser remedy of a reduction in price. *Id.* at pp. 9–10; 130 So. 3d at 814–15 (citing La. Civ. Code Ann. arts. 4, 2541, 2545).

Therefore, a final decision of the Louisiana Supreme Court has given the rule of law that this Court must follow: a plaintiff may recover attorney fees in an action where a statute does not provide for fee recovery only if she could recover attorney fees in an alternative action available to her under the same facts. Here, no statutory provision authorizes unleased mineral interest owners to recover attorney fees. Thus, there is no remedy that J & L could seek that would also entitle it to attorney fees. Therefore, the Court finds that there is no need to make an *Erie* guess because *Stutts* instructs that J & L cannot recover attorney fees.

In the alternative, the Court will consider a broader reading of *Stutts* suggested by J & L's position. In *Stutts*, the Louisiana Supreme Court applied the law of sales by analogy to a cause of action that arose as a result of a sale but that was brought under the law of conventional obligations. *Id.* at p. 7; 130 So. 3d at 813. J & L asks the Court to apply to the relationship between unleased mineral interest owners and unit operators statutes that pertain to the relationships of mineral lessees to owners of mineral production payments, La. Stat. Ann. §§ 31:212.21, 212.23, to royalty owners who are not mineral lessors, *id.*, and to mineral lessors, *id.* §§ 31: 137, 138.1(D)–140 (2000). [Record Document 58 at 7–8]. The question is thus whether the quasi-contractual relationship between J & L and BHP is sufficiently similar to the contractual relationships in the context of which the Mineral Code authorizes the recovery of attorney fees. As there is no Louisiana Supreme Court case on point because the Court has yet to apply *Stutts* to any new factual contexts, an *Erie* guess is required.

Following the procedure established by the Fifth Circuit, the Court looks first to primary sources of Louisiana law. *See* La. Civ. Code Ann. art. 1 (2013) ("The sources of law are legislation and custom."). Under the Civil Code, "[o]bligations arise from contracts and other declarations of

10

will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts." *Id.* art. 1757 (2008). The quasi-contract of management of the affairs of another thus arises by operation of law. *See id.* art. 2292 (2010). Because the language of Article 1757 distinguishes obligations that arise from a declaration of will from those that arise by operation of law, these are mutually exclusive legal categories.

A sale is a nominate contract; the rules of conventional obligations thus apply wherever they are not superseded by provisions specific to the law of sales. *Id.* art. 2438 (1996). Hence, because a sale is a species of contract, a defrauded buyer may have remedies under the law of sales (i.e., rescission for redhibition) and under the law of conventional obligations (i.e., rescission for fraud). *See id.* art. 2545 cmt. (a) (1996) (providing that an action for redhibition "does not preclude an action for fraud against such a seller whenever the requirements of Article 1953 are met"). Unlike the sale of a house, which is both a sale <u>and</u> a contract, the relationship between a mineral interest owner and a unit operator is <u>either</u> a contract <u>or</u> a quasi-contract. In making an *Erie* guess based on the language of the Civil Code as explicated by the revision comments, the Court finds that an analogy of the type made by the *Stutts* court cannot be made between provisions that apply to an obligation arising from a party's will (e.g., a contract) and those that apply to an obligation arising by operation of law (e.g., a quasi-contract).

This finding is supported by the persuasive authority of the Louisiana Third Circuit's *Anderson* decision. In *Anderson v. Moreno Air Conditioning, Inc.*, the court of appeal rejected an argument that *Stutts* authorizes attorney fees in an action to recover damages resulting from a lessee's allegedly fraudulent conduct. 2014-27, pp. 3, 12–13; 140 So. 3d at 846, 851. The court

11

found *Stutts* inapplicable "based on the trial court's determination that the relationship between the [parties] was 'under a verbal month-to-month lease.'" *Id.* at p. 13; 140 So. 3d at 851. The Third Circuit's refusal to extend *Stutts* from the context of one nominate contract (sale) to that of another nominate contract (lease) strongly suggests that the extension of *Stutts* sought by J & L (applying a provision from the law of conventional obligations to an obligation that arises without agreement) is not in accordance with Louisiana law.

Additionally, in Louisiana, "the award of attorney fees is exceptional and penal in nature;" hence, attorney fee statutes must be strictly construed. *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So. 2d 1014, 1015–16 (La. 1984). For instance, the Louisiana First Circuit has recently concluded that by authorizing attorney fees in certain precisely described situations, workers' compensation law excludes fee recovery in other situations. *Our Lady of the Lake Reg'l Med. Ctr. v. Mire*, 2013-1051, p. 10 (La. App. 1 Cir. 2/18/14); 142 So. 3d 52, 58–59 (citing *Stutts*, 2013-0557, p. 8; 130 So. 3d at 814). These holdings reinforce the Court's finding that *Stutts* should not be read to substantially broaden the availability of attorney fees. Hence, because the Mineral Code expressly provides for fee recovery in certain contexts, but the statute applicable to J & L's relationship with BHP does not, J & L is not entitled to attorney fees.

Therefore, the Court finds that *Stutts* does not allow this Court to apply the fee recovery provisions available for contract fraud or for wrongdoing in the context of different obligee-obligor relationships to the alleged wrongdoing in the quasi-contractual relationship between J & L and BHP. The Court thus grants BHP's motion as it pertains to J & L's claim of entitlement to attorney fees whether under Article 1958 directly, by analogy to Article 1958, or by analogy to provisions in the Mineral Code.

### C. Attorney Fees for Tort Fraud

J & L has alleged that BHP has engaged in tortious misrepresentations actionable under La. C.C. art. 2315 and seeks to recover both damages and attorney fees. [Record Document 1-2 at 13–15]. BHP argues that attorney fees are not recoverable in tort barring express statutory authorization. [Record Document 48-2 at 7]. J & L has not responded to this argument. [Record Documents 58 and 62].

Because Article 2315 does not expressly provide for attorney fees, Louisiana courts have held that attorney fees are not available in tort actions. *See Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279, p. 8 (La. 10/2/15); 209 So. 3d 702, 707 (["T]he tortfeasor is not liable for, and the tort victim has no right to recover, attorney fees . . . ."); *Johnson v. Henry*, 2016-0271, p. 6 (La. App. 1 Cir. 10/31/16); 206 So. 3d 916, 920 (citing *Coates v. Anco Insulations, Inc.*, 2000-1331 (La. App. 4 Cir. 3/21/01); 786 So. 2d 749, 756) (holding that attorney fees are unavailable in an action for tort fraud); *Josephs v. Austin*, 420 So. 2d 1181, 1186 (La. Ct. App. 1982) (denying attorney fees in an action for negligent misrepresentation). Moreover, when the legislature intends for attorney fees to be recoverable in tort actions, it clearly indicates this intention. *See* La. Civ. Code Ann. arts. 2315.8–.9 (Supp. 2017) (providing for fee recovery in tort actions arising out of terrorism or domestic abuse). Therefore, J & L cannot recover attorney fees even if it successfully demonstrates that BHP has engaged in tortious misrepresentation. The Court thus grants BHP's motion for summary judgment on the availability of attorney fees for tort fraud.

### D. Attorney Fees Under La. R.S. 31:212.31

J & L seeks attorney fees under a statute requiring that payments to mineral interest owners include specific information on the check stub. [Record Document 1-2 at 16]. As it does with J & L's

13

claim for attorney fees for BHP's alleged tortious misrepresentation, BHP argues that the Court cannot award attorney fees because fee recovery is available only when authorized by contract or statute. [Record Document 48-2 at 6–7]. J & L has not responded to BHP's arguments in any subsequent filing. [Record Documents 58 and 62]. Because the text of the check stub statute does not provide for attorney fees, *see* La. Stat. Ann. § 31:212.31(B) (2000), J & L cannot recover them even if BHP has violated the statute. Therefore, the Court grants BHP's motion for summary judgment with regard to J & L's claim for attorney fees pursuant to La. R.S. 31:212.31.

### E. Louisiana Unfair Trade Practices Act ("LUTPA") Claims

In its opposition, J & L argues that attorney fees are recoverable "under alternative theories of recovery which apply to the facts that support delictual recovery under Article 2315." [Record Document 58 at 8]. J & L then argues that attorney fees are available under LUTPA, *see* La. Stat. Ann. § 51:1409(A) (Supp. 2017), and that its petition adequately pleaded a cause of action for "unfair or deceptive acts or practices in the conduct of any trade or commerce," *id.* § 51:1405(A). [Record Document 58 at 8–10]. BHP has responded that it did not request summary judgment on the issue of whether J & L could recover attorney fees under LUTPA and further, that, even if it had, J & L's petition made no reference to LUTPA and so fails to state a claim. [Record Document 59 at 8–10]. Because BHP has not moved the Court to find that J & L failed state a claim under LUTPA, the Court declines consider this issue. If BHP wishes the Court to do so, BHP may file an appropriate motion to place that issue before the Court.

### IV. Conclusion

Therefore, in light of the foregoing, the Court **GRANTS** BHP's Motion for Partial Summary Judgment, [Record Document 48], on each claim raised in its motion: (1) J & L's claim for penalties

14

and attorney fees under La. R.S. 31:212.21–.23; (2) J & L's claim for contract fraud and associated attorney fees; (3) J & L's claim for attorney fees for tort fraud; and (4) J & L's claim for attorney fees under La. R.S. 31:212.31.

The Court declines to consider whether J & L has properly pleaded a cause of action under LUTPA.

**IT IS FURTHER ORDERED** that the claims on which summary judgment has been granted are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana this 6th day of February, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE