UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| J & L FAMILY, L.L.C. | CIVIL ACTION NO. 16-1193 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| BHP BILLITON PETROLEUM PROPERTIES (N.A.), L.P., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Defendants, BHP Billiton Petroleum Properties (N.A.), L.P., Petrohawk Energy Corporation, BHP Billiton Petroleum (KCS Resources), L.L.C., and BHP Billiton Petroleum (TXLA Operating) Company (collectively "BHP"), have filed a motion to dismiss the fraud claims raised in the Intervention of Longleaf Investments, L.L.C. ("Longleaf"). [Record Document 77]. The parties have filed an opposition and a reply, both of which have been considered by the undersigned. [Record Documents 79–80]. For the reasons discussed below, the motion is **GRANTED**, the fraud and Louisiana Unfair Trade Practices Act ("LUTPA") claims are **DISMISSED WITHOUT PREJUDICE**, and Longleaf is granted leave to amend by **April 23, 2018**.

## I. Background

### A. Factual Background

J & L Family, L.L.C. ("J & L") owns land within two drilling units created by the Louisiana Commissioner of Conservation, but J & L's interest is not subject to any mineral lease. [Record Documents 48-1 at 1–2 and 58-1 at 1–2]. Longleaf is J & L's predecessor in interest.

1

[Record Document 76 at 2–3]. BHP operates wells on the drilling units. [Record Documents 48-1 at 2 and 58-1 at 2–3].

Under Louisiana law, unit operators are allowed to recoup from unleased owners their proportionate shares of "actual reasonable expenditures incurred in drilling, testing, completing, equipping, and operating the subject wells" ("Drilling Costs"). La. Stat. Ann. § 30:10(A)(2)(b)(i) (2017). Unleased owners of mineral interests are entitled to receive, upon request, reports detailing the cost of drilling and operating a well. *Id.* § 30:103.1. Additionally, if an unleased owner does not make separate arrangements to market the production from the well, the operator may market the production and pay the unleased owner its "pro rata share of the proceeds of the sale." *Id.* § 30:10(A)(3). Longleaf alleges that BHP failed to provide sufficiently detailed reports, improperly calculated Longleaf's ownership percentage, deducted excessive Drilling Costs, and improperly deducted costs associated with processing and transporting the extracted minerals ("Midstream Costs"). [Record Document 76 at 8–24].

In Count VII of the Intervention, Longleaf alleges that BHP charged Longleaf "fraudulently inflate[d]" Drilling Costs exceeding those that an operator may charge an unleased owner. [*Id.* at 25]. Also in Count VII, Longleaf alleges that BHP "fraudulently inflate[d] Mid-Stream costs in order to service its obligations related to a financing agreement that was entered into with an affiliated company." [*Id.*]. Although not specifically described as such, it appears that Longleaf has also attempted to state a claim for fraud in Count I, which concerns BHP's alleged failure to comply with La. R.S. 30:103.1. [*Id.* at 8–14].

2

### B. Procedural History

J & L filed suit raising essentially the same set of allegations as Longleaf has raised in the Intervention. [Record Document 1-2 at 3–16]. J & L and BHP then moved for summary judgment on the issue of BHP's compliance with the reporting requirements of La. R.S. 30:103.1. [Record Documents 12 and 22]. The Court denied the motions following oral argument. [Record Document 57]. Shortly before oral argument, BHP moved for partial summary judgment on the issue of J & L's ability to recover attorney fees. [Record Document 48]. The Court granted the motion, finding that neither BHP's alleged violations of La. R.S. 31:212.21–.23 and La. R.S. 31:212.31 nor its alleged tort and contract fraud entitled J & L to attorney fees. *J & L Family, L.L.C. v. BHP Billiton Petroleum Props. (N.A.), L.P.*, No. CV 16-1193, 2018 WL 734684 (W.D. La. Feb. 6, 2018). While that motion was pending, Longleaf moved to intervene. [Record Document 71]. After the Court granted the motion, BHP moved to dismiss Longleaf's fraud claims. [Record Documents 75 and 77].

## II. Law and Analysis

### A. Standard of Review

To survive a motion to dismiss, allegations of fraud must "state with particularity the circumstances constituting fraud," although "intent [and] knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997). As it must when considering an ordinary 12(b)(6) motion, a court evaluating a motion to dismiss on Rule

3

9(b) grounds must accept all of the plaintiff's factual allegations as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009). Nevertheless, the heightened pleading requirement of Rule 9(b) is an "additional burden" that exceeds the general requirement that a plaintiff's allegations "state[] a legally cognizable claim that is plausible." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032, 1034 (5th Cir. 2010) (per curiam) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *opinion modified on other grounds on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003)).

### B. Pleading Requirements for Fraud Claims

Rule 9(b) protects defendants' reputations from being harmed by unsupported allegations of fraud. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). In light of this policy, the Fifth Circuit "interprets Rule 9(b) strictly," *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564 (5th Cir. 2002), and therefore requires a plaintiff to allege the "who, what, when, where, and how" of the fraud, *Benchmark Elecs.*, 343 F.3d at 724. To do so successfully, she must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). The lack of specific information on any of these elements is fatal to a fraud claim. *See, e.g., Kreway v. Countrywide Bank, FSB*, 647 F. App'x 437, 438 (5th Cir. 2016) (per curiam) (dismissing fraud claim based on alleged forgery when complaint specified neither identify of forger nor time, place, and manner of execution); *Dawson v. Bank of Am., N.A.*, 605 F. App'x 263, 266 (5th Cir. 2015) (per curiam) (dismissing fraud allegations despite complaint's emphasis on the "purportedly 'malic[ious],' 'unconscionable,' and 'predatory'

nature of the Bank's conduct" when complaint failed to specify the particular circumstances surrounding the alleged fraud); *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (dismissing fraud claim based on defendant's alleged misrepresentation of a commitment to provide services when plaintiff failed to "allege when or how this commitment was made or who at Humana made it"); *Williams*, 112 F.3d at 178–79 (dismissing fraud claim because complaint did not state the place or time of the alleged misrepresentations). *But see, e.g., Benchmark Elecs.*, 343 F.3d at 724 (finding fraud allegations sufficient when complaint described the specific statements that were fraudulent, when they were made, the persons who made them, and "why the various assertions [we]re fraudulent or misleading").

### C. <u>Longleaf's Tort Fraud Claims</u>

The Court has already determined that the relationship between J & L and BHP is non-contractual. *J & L Family, L.L.C.*, 2018 WL 734684, at *3; *see Wells v. Zadeck*, 2011-1232, p. 6 (La. 3/30/12); 89 So. 3d 1145, 1149 ("A quasi-contractual relationship is created between the unit operator and the unleased mineral interest owner with whom the operator has not entered into contract."). The relationship between Longleaf and BHP arose under the same statutory scheme and was likewise non-contractual. Therefore, Longleaf's allegations of fraud can refer to tort fraud only. Because the Court is sitting in diversity, the elements of fraud that Longleaf must allege are determined by state law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). A tort fraud claim under Louisiana law has three elements: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant

5

injury." *Becnel v. Grodner*, 2007-1041, p. 3 (La. App. 4 Cir. 4/2/08); 982 So. 2d 891, 894 (citing *Newport Ltd. v. Sears Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993)). Because the requirements of Rule 9(b) apply with equal force when evaluating whether state law causes of action alleging fraudulent conduct have been sufficiently pleaded, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008), each of these elements must be alleged with the requisite degree of specificity.

### 1. Material Misrepresentation

Misrepresentation "impl[ies] an element of trickery," *State v. Tufts*, 391 So. 2d 1114, 1115 (La. 1980) (discussing misrepresentation in the context of criminal fraud), and hence is more than a mere "misstatement[] of fact," *Prevo v. State ex rel. Dep't of Pub. Safety & Corr. Div of Prob. & Parole*, 2015-0823, p. 6 (La. 11/20/15); 187 So. 3d 395, 399 (citing *Rajnowski v. St. Patrick's Hosp.*, 564 So. 2d 671, 674 (La. 1990)) (discussing meaning of misrepresentation for purposes of justifying application of contra non valentem). A person may misrepresent the truth either by making a counterfactual statement or by failing to disclose a material fact. *See La Croix v. Recknagel*, 89 So. 2d 363, 365, 367 (La. 1956) (analyzing misrepresentation in contract fraud); *Buxton v. McKendrick*, 64 So. 2d 844, 845 (La. 1953) (same). To allege a fraudulent omission of material facts, the plaintiff must "plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004). Additionally, an omission is only tortious when the defendant has "a duty to speak or disclose information." *Chateau Homes by RJM, Inc. v. Aucoin*, 11-1118, p. 14 (La. App.

6

5 Cir. 5/31/12); 97 So. 3d 398, 405 (citing *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 442 (5th Cir. 2011) (per curiam)).

Therefore, to successfully plead its fraud claims, Longleaf must specifically describe the misrepresentations BHP made, the form in which they were made, the person who made them, and the place and time they were made. In regard to the claim that BHP failed to comply with La. R.S. 30:103.1, Longleaf has specifically identified the documents containing the alleged omissions, but has failed to specify the information that it believes was omitted; Longleaf merely accuses BHP of providing only "abbreviated categories of costs with summary totals." [Record Document 76 at 13]. Longleaf also does not explain how the alleged omission of more detailed information was misleading.

Longleaf's pleading is also deficient in the fraud allegations in Count VII. For instance, when describing the allegedly excessive Drilling Costs, Longleaf introduces the list of costs: "[b]y way of <u>example</u>, and <u>without limitation</u>." [*Id.* at 15 (emphasis added)]. Longleaf thus admits that it has not specified each of BHP's alleged misrepresentations. Moreover, the description of the Drilling Costs and Mid-Stream Costs does not indicate the form in which these charges were communicated to Longleaf, when they were communicated, or who issued the communication. [*Id.* at 15–16, 21]. Similarly, because Longleaf has not alleged that BHP did not actually incur these costs, the misrepresentation being alleged must be that BHP represented the costs as ones that it was lawfully allowed to charge an unleased owner. However, Longleaf has not explained how BHP misrepresented these costs as lawfully owed. This allegation thus lacks the precision necessary to enable BHP to mount a defense and so fails to satisfy the heightened pleading

requirements of Rule 9(b).

### 2. Intent to Deceive

Tort fraud requires more than "mere mistake or negligence, however gross." *Smith v. Roussel*, 2000-1028, p. 4 (La. App. 1 Cir. 6/22/01); 809 So. 2d 159, 164. Indeed, "[f]or purposes of tort fraud, the intent to deceive is specific intent." *Chateau Homes*, 11-1118, pp. 13–14; 97 So. 3d at 404 (citing *Schaumburg*, 421 F. App'x at 442). Although intent "may be alleged generally," Fed. R. Civ. P. 9(b), the rule still "requires more than a simple allegation that a defendant had fraudulent intent," *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994), *superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, sec. 101, § 21D(b)(2), 109 Stat. 737, 747. Rather, a plaintiff must "set forth specific facts to support an inference of fraud" either by alleging facts that establish a motive for committing fraud or "circumstances that indicate conscious behavior on the part of the defendant." *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1019 (5th Cir. 1996). If the necessary facts are "peculiarly within the opposing party's knowledge," they may be alleged on information and belief. *Tuchman*, 14 F.3d at 1068.

Hence, to successfully state each of its claims for fraud, Longleaf must either allege facts establishing a motive for BHP to commit fraud or otherwise identify circumstances indicating that BHP acted consciously when making alleged misrepresentations. *See Dorsey*, 540 F.3d at 339. Longleaf's first fraud claim alleges "knowing" overcharging of Drilling Costs. [Record Document 76 at 25]. Although this allegation of knowledge suggests the sort of "conscious behavior" that can demonstrate intent, Fifth Circuit precedent requires that Longleaf also

"identify circumstances that indicate" that BHP had such knowledge. *Lovelace*, 78 F.3d at 1019 (emphasis added). Here, Longleaf has merely alleged that BHP knew that the Drilling Costs exceeded those allowed by law; Longleaf has not pleaded the "circumstances" from which the inference may be drawn that Longleaf had that knowledge.

Longleaf's second fraud claim alleges the inflation of Mid-Stream Costs in order to benefit an affiliated company. The desire "to service its obligations related to a financing agreement" provides a motive for BHP to consciously overcharge Longleaf. [Record Document 76 at 25]. This allegation thus assists Longleaf in stating its claim for fraud. *See Shandong*, 607 F.3d at 1034 ("[F]unneling money from one entity to another could be slight circumstantial evidence of fraud . . . ." (internal quotation marks omitted)). However, the intent required under Louisiana law is "intent to defraud." *Becnel*, 2007-1041, p. 3; 982 So. 2d at 894 (emphasis added). Because fraud requires a misrepresentation, an intent to defraud requires knowledge that the representation made is false. Although knowledge may be alleged generally, Fed. R. Civ. P. 9(b), the Intervention does not allege that any person at BHP was aware that the Mid-Stream Costs were excessive.

With regard to the alleged failure to comply with La. R.S. 30:103.1, Longleaf has failed to allege any facts warranting an inference that BHP had the intent to defraud Longleaf. In fact, Longleaf has pleaded that BHP stated its "belie[f] [that] it has fulfilled its reporting obligation." [Record Document 76 at 12]. Therefore, to the extent that any notices failed to satisfy the reporting requirements of La. R.S. 30:103.1, the Intervention fails to allege any facts from which the Court can infer that BHP had fraudulent intent when it failed to comply with the statute.

9

### 3. Reliance Causing Injury

Reliance occurs when but for the deception practiced by the defendant, the plaintiff "would not have acted as he did to his detriment." *Sun Drilling Prods. Corp. v. Rayborn*, 2000-1884, p. 16 (La. App. 4 Cir. 10/3/01); 798 So. 2d 1141, 1153. Because Longleaf has alleged that it contributed to Drilling and Mid-Stream Costs that exceeded those allowed by law, [Record Document 76 at 15, 20], Longleaf has alleged both reliance and injury. However, it is unclear how Longleaf acted in reliance on the notices that allegedly violated La. R.S. 30:103.1. Although Longleaf has alleged that being provided with only "summary information" left it unable to "decipher whether the costs was [sic] a reasonable expenditure incurred in drilling, testing, completing, equipping, and operating the Subject Wells," [Record Document 76 at 13], it is unclear how Longleaf's inability to make this determination either constituted or caused an injury.

Therefore, in light of the lack of specificity with which they are pleaded, the Court finds that Longleaf has failed to satisfy Rule 9(b) with respect to its fraud claims.

### D. <u>Longleaf's LUTPA Claim</u>

The court construes Longleaf's allegation that BHP has engaged in "unfair trade practice" as an attempt to state a claim under LUTPA. [Record Document 76 at 27].[1] LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any

---

[1] Although the Court finds that the Intervention identifies a cause of action under LUTPA, even if the action has not been pleaded with sufficient specificity, the Court makes no finding regarding whether the Complaint by J & L [Record Document 1-2] states a claim under LUTPA. *See J & L Family*, 2018 WL 734684, at *7 (declining to decide whether J & L's complaint stated a cause of action under LUTPA because the question was not properly raised).

trade or commerce." La. Stat. Ann. § 51:1405(A) (2015). Victims of conduct violating La. R.S. 15:1405 have a private right of action to recover damages. *Id.* § 51:1409(A); *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633, p. 6 (La. 4/23/10); 35 So. 3d 1053, 1057. Despite the apparent breadth of the statutory language, "the range of prohibited practices under LUTPA is extremely narrow. . . . . LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Cheramie Servs.*, 2009-1633, p. 11; 35 So. 3d at 1060 (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)). Hence, to state a LUTPA claim, a plaintiff must allege facts "invit[ing] an[] inference of egregious wrongdoing." *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 677 (E.D. La. 2012) (citing *Cheramie Servs.*, 2009-1633, p. 11; 35 So. 3d at 1060).

Because "Rule 9(b) applies . . . to all averments of fraud, whether they are part of a claim of fraud or not," *Lone Star Ladies Inv. Club v. Scholtzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001), when fraud gives rise to a cause of action under LUTPA, a plaintiff must comply with the rule's heightened pleading standards, *Pinero v. Jackson Hewitt Tax. Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009). Longleaf's LUTPA allegations deploy the same facts as its fraud allegations. [Record Document 76 at 24–27]. Therefore, for the reasons discussed above with regard to the sufficiency of the fraud allegations, Longleaf's Intervention fails to state a claim under LUTPA.

### E. Amendment

In the alternative to its argument that it has adequately pleaded its fraud claims, Longleaf requests leave to amend. [Record Document 79 at 9]. Because "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing," *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000),

11

the Court will dismiss Longleaf's fraud and LUTPA claims without prejudice and grant Longleaf leave to amend.

III. Conclusion

In light of the foregoing, BHP's Motion to Dismiss [Record Document 77] is **GRANTED**. Longleaf's fraud and LUTPA claims are **DISMISSED WITHOUT PREJUDICE**, and Longleaf is granted until **April 23, 2018** to file an amended complaint that pleads these allegations with the specificity required by Rule 9(b).

**THUS DONE AND SIGNED**, in Shreveport, Louisiana this 25th day of March, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE